1  ROD M. FLIEGEL, Bar No. 168289
   rfliegel@littler.com
2  LITTLER MENDELSON, P.C.
   333 Bush Street, 34th Floor
3  San Francisco, California 94104
   Telephone: 415.433.1940
4  Facsimile: 415.399.8490

5  WILLIAM J. SIMMONS*
   wsimmons@littler.com
6  LITTLER MENDELSON, P.C.
   Three Parkway
7  1601 Cherry Street, Suite 1400
   Philadelphia, Pennsylvania 19102
8  Telephone: 267.402.3000
   Facsimile: 267.402.3131

9
   *Admitted *pro hac vice*
10
   Attorneys for Defendant
11 CHECKR, INC.

12                    UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14

15 | JOSE MONTANEZ, on behalf of himself and all others similarly situated, | Case No. 4:19-CV-07776-KAW

16 | | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CHECKR, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION**

17 | Plaintiff, |

18 | v. |

19 | CHECKR, INC., | Date: June 18, 2020
                   Time: 1:30 p.m.
20 | Defendant. | Dept.: TBD
                  Judge: Hon. Kandis A. Westmore
21 |

22 | | Complaint Filed: November 26, 2019

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

MPA ISO DEFENDANT CHECKR, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF FACTS AND PROCEDURAL BACKGROUND | 2 |
| | A. Checkr Prepares A Background Report On Plaintiff, And Plaintiff Accesses Checkr's Services Through Its Candidate Portal | 2 |
| | B. Plaintiff Agrees To Arbitrate His Claims Against Checkr On An Individual Basis And Does Not Opt Out Of Arbitration | 3 |
| | C. Plaintiff Files This Lawsuit Despite His Agreement To Arbitrate | 4 |
| III. | LAW AND ARGUMENT | 5 |
| | A. The Parties Have A Valid And Binding Arbitration Agreement | 6 |
| | B. The Class Action Waiver Is Valid And Enforceable | 8 |
| | C. The Arbitrator Must Decide Whether Plaintiff's Individual Claims Are Subject To Arbitration | 9 |
| | D. Plaintiff's Claims Fall Within The Scope Of The Arbitration Agreement | 10 |
| | E. The Court Should Dismiss The Action Instead of Staying It | 11 |
| IV. | CONCLUSION | 11 |

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

*ii.*

MPA ISO DEFENDANT CHECKR, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
　563 U.S. 333 (2011).................................................................................................5, 8

*Chiron Corp. v. Ortho Diagnostic Sys.*,
　207 F.3d 1126 (9th Cir. 2000) .........................................................................................6

*Dean Witter Reynolds, Inc. v. Byrd*,
　470 U.S. 213 (1985)........................................................................................................11

*Epic Sys. Corp. v. Lewis*,
　138 S. Ct. 1612 (2018) ....................................................................................................8

*First Options of Chicago, Inc. v. Kaplan*,
　514 U.S. 938 (1995).....................................................................................................6, 9

*Green Tree Fin. Corp.-Ala. v. Randolph*,
　531 U.S. 79 (2000)...........................................................................................................6

*Han v. Samsung Telcoms. Am., LLC*,
　Case No. CV 13-3823-GW(AJWx), 2014 U.S. Dist. LEXIS 17884 (C.D. Cal. Jan. 30, 2014) ........................................................................................................................7

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
　139 S. Ct. 524 (2019) ................................................................................................9, 10

*i.Lan Sys., Inc. v. Netscout Serv. Level Corp.*,
　183 F. Supp. 2d 328 (D. Mass. 2002) .............................................................................7

*Johnmohammadi v. Bloomingdale's, Inc.*,
　755 F.3d 1072 (9th Cir. 2014) .......................................................................................11

*Koresko v. RealNetworks, Inc.*,
　291 F. Supp. 2d 1157 (E.D. Cal. 2003)...........................................................................7

*Krogstad v. Loan Payment Admin. LLC*,
　740 Fed. App'x 564 (9th Cir. 2018) ................................................................................8

*Levin v. Caviar, Inc.*,
　146 F. Supp. 3d 1146 (N.D. Cal. 2015) ..........................................................................7

*Lockhart v. GMC*,
　Case No. 01-cv-2052, 2001 U.S. Dist. LEXIS 26761 (C.D. Cal. Aug. 29, 2001).........7

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

*iii.*

MPA ISO DEFENDANT CHECKR, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

*Martinez v. Checkr, Inc.*,
  Civil Action No. 1:19-cv-4369-WMR-JKL (N.D. Ga.) ................................................................... 1

*MegaCorp Logistics LLC v. Turvo, Inc.*,
  No. 18-CV-01240-EMC, 2018 WL 3619656 (N.D. Cal. July 30, 2018) ......................................... 9

*Stephens v. Checkr, Inc.*,
  Case No. 8:19-cv-2252-T-36AAS (M.D. Fla.) ............................................................................... 1

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ................................................................................................................. 5, 6, 10

*Novic v. Credit One Bank, N.A.*,
  757 F. App'x 263 (4th Cir. 2019) ................................................................................................. 11

*Peng v. Uber Techs., Inc.*,
  237 F. Supp. 3d 36 (E.D.N.Y. 2017) .............................................................................................. 7

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010) ......................................................................................................................... 9

*Rock v. Solar Rating & Certification Corp.*,
  Case No. 8:17-cv-3401-DDC-JDA, 2018 U.S. Dist. LEXIS 133576 (D.S.C. July
  23, 2018) ......................................................................................................................................... 7

*Rockridge Trust v. Wells Fargo, N.A.*,
  985 F. Supp. 2d 1110 (N.D. Cal. 2013) .......................................................................................... 6

*Rum v. DARCARS of New Carrollton, Inc.*,
  Civ. A. No. DKC 12-0366, 2012 U.S. Dist. LEXIS 95443 (D. Md. July 10, 2012) ...................... 5

*Aldridge v. Checkr, Inc.*,
  Civil Action No. SA-19-CA-1013-FB (W.D. Tex.) ....................................................................... 1

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ....................................................................................................................... 8

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960) ..................................................................................................................... 10

**Statutes**

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ........................................................... 2, 5, 11

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ................................................................... *passim*

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

iv.

MPA ISO DEFENDANT CHECKR, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

Defendant CHECKR, INC. ("Defendant" or "Checkr") respectfully requests that the Court enforce the class action waiver to which Plaintiff JOSE MONTANEZ ("Plaintiff") (collectively, the "Parties") agreed, compel arbitration of Plaintiff's claims on an individual basis, and dismiss, or stay, those claims pending completion of arbitration. The grounds in support of this Motion are set forth in the attached Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff must arbitrate his claims against Defendant on an individual basis, as agreed, under the binding Arbitration Provision (the "Arbitration Agreement" or the "Agreement") in Checkr's Terms of Service ("TOS"). The Same Arbitration Agreement has been enforced repeatedly in other matters. *See Michael Stephens v. Checkr, Inc.*, Case No. 8:19-cv-2252-T-36AAS (M.D. Fla.); *Samantha Leigh Aldridge v. Checkr, Inc.*, Civil Action No. SA-19-CA-1013-FB (W.D. Tex.); *Maria Isolina Martinez v. Checkr, Inc.*, Civil Action No. 1:19-cv-4369-WMR-JKL (N.D. Ga.) (Request for Judicial Notice in support of Checkr's Motion to Compel Individual Arbitration, Ex. A). Checkr has elected to arbitrate this dispute under the Parties' Agreement, but Plaintiff has refused. Plaintiff cannot evade his promise to arbitrate his claims, and Checkr respectfully requests that the Court hold Plaintiff to his promises to waive his class claims and to arbitrate his individual claims.

The Arbitration Agreement contains a class action waiver. Under that provision, Plaintiff and Checkr unequivocally agreed to bring and resolve any claims against each other on an individual basis only and not as a named-plaintiff or class member or representative. Based on the class waiver, Plaintiff cannot proceed with the class claims he has asserted in this matter.

The Agreement also contains a delegation clause, which provides that all issues regarding arbitrability will be decided by an arbitrator. Thus, the only issue for the Court to decide (other than the validity of the class waiver) is whether the Arbitration Agreement was properly formed, which it was. After that determination is made, the Court must send the case to arbitration where it will be up to the arbitrator to decide if the Agreement covers Plaintiff's individual claims.

Even if the Court were to decide the arbitrability issue, Plaintiff's claims against Checkr fall within the scope of the Arbitration Agreement and must be arbitrated on an individual basis.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

1.     CASE NO. 4:19-CV-07776-KAW
CHECKR, INC.'S MTN TO COMPEL INDIVIDUAL ARB. AND DISMISS OR STAY PROCEEDINGS

Specifically, the Agreement covers all claims that Plaintiff may have against Checkr based on services provided by Checkr, including obtaining, delivering, and managing background reports, Checkr's processes for generating background reports, and any disputes relating to Plaintiff's background check. Plaintiff's Fair Credit Reporting Act ("FCRA") claims against Checkr, which challenge Checkr's processes for generating the background report Checkr prepared about Plaintiff, fall squarely within the covered claims. Thus, the claims must be arbitrated on an individual basis.

For these and the other reasons set forth below, Checkr respectfully moves the Court for an order compelling Plaintiff to arbitrate his claims against Checkr on an individual basis and dismissing or staying this case pending arbitration.

## II. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

### A. Checkr Prepares A Background Report On Plaintiff, And Plaintiff Accesses Checkr's Services Through Its Candidate Portal

Checkr provides certain services as a consumer reporting agency. (Declaration of Preethi Bhansali, at ¶ 3). These services include preparing consumer reports for permissible purposes, as listed in the FCRA. (*Id*. at ¶¶ 3, 6).

Plaintiff claims that, in September 2018, Checkr prepared a background report on Plaintiff at the request of Uber. (Complaint (ECF No. #1), at ¶ 2). On September 21, 2018, Plaintiff accessed Checkr's online Candidate Portal, and was presented with Checkr's TOS for use of the Candidate Portal. (Bhansali Decl., at ¶¶ 6, 9). Plaintiff electronically agreed to the TOS that same day by clicking a box next to a statement that: "By checking this box, I agree to Checkr's Terms of Service . . . ." (*Id*. at ¶¶ 8–9).

The TOS governs all aspects of a person's access to and use of Checkr's "Services" through the online Candidate Portal.[1] (*Id*. at ¶ 7). "Services" under the TOS include "obtaining, delivering, and managing background reports and related documentation; obtaining status information regarding background reports; Checkr's processes for generating background reports and resolving potential inaccuracies; requesting a copy of [Plaintiff's] consumer file; and/or any disputes relating to [Plaintiff's] background check." (*Id*., Ex. 2 at p. 1).

---

[1] Individuals can take advantage of Checkr's Services without using the Candidate Portal, for example, by calling or emailing Checkr to request such Services. (*Id*. at ¶ 7).

**B.  Plaintiff Agrees To Arbitrate His Claims Against Checkr On An Individual Basis And Does Not Opt Out Of Arbitration**

The top of the first page of the TOS clearly and conspicuously advised Plaintiff that the TOS included the Arbitration Agreement and class action waiver. (*Id.*). It stated in bold text in all capital letters:

> **IMPORTANT NOTICE: THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION AND CLASS ACTION WAIVER. IT AFFECTS YOUR LEGAL RIGHTS UNLESS YOU OPT OUT, AS DETAILED IN THE ARBITRATION AND CLASS ACTION WAIVER SECTION BELOW. PLEASE READ CAREFULLY.**

Just below that initial notice, the TOS included a second notice, again advising Plaintiff, in all capital letters, that:

> SECTION 14 OF THIS AGREEMENT GOVERNS HOW DISAGREEMENTS AND CLAIMS BETWEEN YOU AND CHECKR CAN BE RESOLVED. THIS SECTION, WITH LIMITED EXCEPTION, REQUIRES YOU AND CHECKR TO SUBMIT CLAIMS AGAINST EACH OTHER TO BINDING AND FINAL ARBITRATION.

(*Id.*). The beginning of Section 14 contains similar language in bold and capital letters and admonished Plaintiff to "**PLEASE READ THIS SECTION CAREFULLY**." (*Id.* at p. 9).

Through the Arbitration Agreement in Section 14, Plaintiff and Checkr "mutually agree[d] to give up [their] right to resolve disagreements in a court of law by a judge or jury, and . . . agree[d] to binding and final arbitration pursuant to the Federal Arbitration Act ["FAA"], 9 U.S.C. § 1, et seq." (*Id.*). The claims covered by the Arbitration Agreement, include, with limited exceptions, "any disagreement, claim, or controversy arising out of or relating in any way to the[] [TOS] . . . or [Plaintiff's] access to and/or use of the Services, or the provision of content, services, and/or technology on or through the Services (hereinafter, 'Claims') . . . ." (*Id.* at pp. 9–10). Arbitrations under the Agreement are to be administered by the American Arbitration Association ("AAA"), before a mutually agreed upon arbitrator, in accordance with the Agreement and the applicable AAA rules. (*Id.* at pp. 10–11).

The Arbitration Agreement contained a class action waiver provision, stating, in bold print: "**You and Checkr agree to bring and resolve any Claims only on an individual basis, and**

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

3.

MPA ISO DEFENDANT CHECKR, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

**not as a named-Plaintiff or class member in any class or representative proceeding.**" (*Id* at p. 10). Plaintiff acknowledged and agreed that he was "waiving the right to participate as a plaintiff or class member in any purported class action lawsuit, class wide arbitration, or any other representative proceeding as to all Claims (hereinafter, 'Class Action Waiver')." (*Id*.).

Other than disagreements related to the enforceability of the Class Action Waiver, which must be decided by the Court, the Parties agreed to delegate arbitrability issues to the arbitrator. (*Id*.) The Agreement provides that any "disagreement about the arbitrability of any Claim (including questions about the scope, applicability, interpretation, validity, and enforceability of this arbitration agreement) . . . shall be delegated to the arbitrator (not a court)." (*Id*. at p. 10). "[T]he arbitrator shall have initial authority to resolve such threshold disagreements." (*Id*.).

The Agreement also included an opt-out provision, stating that Plaintiff had "the right to opt-out and not be bound by [the Arbitration Agreement] by sending written notice to Checkr" at the email address or mailing address provided. (*Id*. at p. 11). Any opt-out had to be sent within 30 days of Plaintiff's agreement to the TOS. (*Id*.). The Agreement also instructed Plaintiff that if he did not opt out of the Agreement, "[Plaintiff] and Checkr shall be bound by the terms of [the Agreement] in full." (*Id*.). Plaintiff did not send a written opt-out notice to Checkr within the 30-day timeframe or at all. (Bhansali Decl., at ¶ 10).

### C. Plaintiff Files This Lawsuit Despite His Agreement To Arbitrate

On November 26, 2019, Plaintiff, on behalf of himself and all others similarly situated, filed a Class Action Complaint ("Complaint") against Checkr under the FCRA. (Complaint (ECF No. 1), at ¶ 4). Plaintiff alleges that Checkr violated 15 U.S.C. §§ 1681c(a)(5), 1681e(a), and 1681e(b) of the FCRA, and seeks to represent four subclasses of consumers on whom Checkr provided consumer reports with certain information during the two years before the Complaint was filed. (*Id*. at ¶¶ 38, 46–51). Specifically with respect to his individual claim, Plaintiff alleges that Checkr failed to follow reasonable procedures to assure maximum possible accuracy of the information contained in the background report it provided on Plaintiff to Uber in September 2018. (*Id*. at ¶ 47). Plaintiff also alleges that Checkr reported non-conviction information on him that antedated the report by more than

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

4.
MPA ISO DEFENDANT CHECKR, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

seven years and failed to maintain reasonable procedures to avoid reporting such information. (*Id*. at ¶¶ 49, 51).

On January 16, 2020, Checkr filed its Answer to Plaintiff's Complaint. (Answer (ECF No. 20)). As one of its defenses, Checkr pled:

> Plaintiff's claims are barred, in whole or in part (including but not limited to for lack of jurisdiction or venue), to the extent that Plaintiff or any members of the putative class are bound to arbitrate their claims on an individual basis. This may include, for instance, where Plaintiff or members of the putative class signed a binding arbitration agreement with Checkr, with one or more third-parties (*e.g.*, Uber, Lyft, Postmates, Grubhub, or with both Checkr and one or more third-parties.

(*Id*. at ¶ 9). Since Checkr filed its Answer, Checkr's counsel has informed Plaintiff's counsel that Checkr would move the Court to compel arbitration. Checkr therefore now seeks an order compelling Plaintiff to arbitrate his claims on an individual basis in accordance with his promises in the Agreement.

## III. LAW AND ARGUMENT

The Court should compel arbitration in accordance with the FAA, which applies because the Services Checkr provided under the TOS involved interstate commerce.[2] The FAA reflects a "liberal federal policy favoring arbitration," and requires courts to vigorously enforce agreements to arbitrate. *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). The statute stands as "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone*, 460 U.S. at 24; *see also Concepcion*, 563 U.S. at 339. It expressly provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Arbitration agreements therefore must be

---

[2] Plaintiff alleges that Checkr is a "consumer reporting agency" under the FCRA (*see* Complaint (ECF No. 1) at ¶ 8), which requires that it furnish consumer reports to third parties using "any means or facility of interstate commerce." 15 U.S.C. § 1681a(f). Plaintiff has therefore effectively conceded the interstate nexus required under the FAA. *See, e.g.*, *Rum v. DARCARS of New Carrollton, Inc.*, Civ. A. No. DKC 12-0366, 2012 U.S. Dist. LEXIS 95443, at \*\*9–10 (D. Md. July 10, 2012) (finding the plaintiff conceded a transaction involved interstate commerce under the FAA where she asserted claims under federal statutes that only applied to entities engaged in interstate commerce).

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

MPA ISO DEFENDANT CHECKR, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

enforced according to their terms, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25.

A district court must grant a motion to compel arbitration where "a valid agreement to arbitrate exists" and "the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (upholding the district court's decision to grant a motion to compel arbitration). "[The] party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000); *United States v. Singulex, Inc.*, No. 4:16-cv-05241-KAW, 2019 WL 1472307, at *2 (N.D. Cal. April 3, 2019) (granting motion to compel arbitration).

Here, Plaintiff cannot meet his burden of proving that his claims are unsuitable for arbitration. But the Court does not even need to go that far. Rather, by the Arbitration Agreement's plain terms, the arbitrability of Plaintiff's individual claims against Checkr must be decided by the arbitrator, not the Court. Thus, in this case, the Court must decide only whether a valid arbitration agreement exists (which it does) and any disagreements regarding the enforceability of the Class Action Waiver. After finding a valid agreement and class action waiver exists, the Court must compel Plaintiff to arbitrate his claims on an individual basis and defer any remaining questions regarding arbitrability to the arbitrator.

**A.  The Parties Have A Valid And Binding Arbitration Agreement**

Plaintiff entered into a valid and binding Arbitration Agreement when he assented to the TOS and did not later (or ever) opt out of the arbitration provision.

State contract law governs whether a valid arbitration agreement was formed. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). To form a valid contract under California law, there must be mutual assent (offer and acceptance), sufficiently definite contractual terms, and consideration." *Rockridge Trust v. Wells Fargo, N.A.,* 985 F. Supp. 2d 1110, 1142 (N.D. Cal. 2013). All three elements are present here.

Checkr made a valid offer when it presented the TOS and Arbitration Agreement to Plaintiff in exchange for giving Plaintiff free, unfettered access to its Services through the online Candidate Portal. The TOS clearly and conspicuously notified Plaintiff of the Arbitration Agreement

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

6.
MPA ISO DEFENDANT CHECKR, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

in multiple places, including the very top of the TOS, in bold and/or capital letters. (Bhansali Decl., Ex. 2 at p. 1). Plaintiff knowingly and voluntarily accepted the terms of the TOS and the Arbitration Agreement by clicking the "I agree" box and proceeding to Checkr's online Portal. (Bhansali Decl., at ¶¶ 8–9).[3] Plaintiff further manifested his intent to be bound to the Agreement by not opting out of it despite being on notice of his opt-out rights. *See Han v. Samsung Telcoms. Am., LLC*, Case No. CV 13-3823-GW(AJWx), 2014 U.S. Dist. LEXIS 17884, at *11 (C.D. Cal. Jan. 30, 2014) (finding that a valid arbitration agreement was formed where the plaintiff had an opportunity to opt-out of arbitration but did not do so).

The Agreement is also supported by consideration. Plaintiff agreed to the TOS in exchange for free access to Checkr's Services through its online Candidate Portal. Further, the TOS contained a mutual promise to arbitrate that binds Checkr to arbitrate any covered claims it may have against Plaintiff. (Bhansali Decl., Ex. 2 at p. 9). The Agreement states that "[Plaintiff] and Checkr *mutually agree* to give up [their] right to resolve disagreements in a court of law by a judge or jury, and . . . agree to binding and final arbitration pursuant to the [FAA]." (*Id*. (emphasis added)). This is sufficient consideration. *See Lockhart v. GMC*, Case No. 01-cv-2052, 2001 U.S. Dist. LEXIS 26761, at *5 (C.D. Cal. Aug. 29, 2001) ("[I]t is well settled that mutual promises made by parties to a contract to submit claims to arbitration constitute sufficient consideration to support the agreement.").

All of the elements required for a valid contract (offer, acceptance, and consideration) are met in this case. Accordingly, the Arbitration Agreement is valid and enforceable, and this should

---

[3] Courts have found repeatedly that individuals assent to Arbitration Agreements by clicking "I agree" and similar buttons in online agreements like the TOS. *See Levin v. Caviar, Inc*., 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015) (granting motion to compel arbitration and enforcing clickwrap agreement that allowed the plaintiff an opportunity to review the terms before clicking the acceptance button) (citing *Tompkins v. 23andMe, Inc.*, Case No. 5:13-CV-05682-LHK, 2014 U.S. Dist. LEXIS 88068 (N.D. Cal. June 25, 2014)); *see also Rock v. Solar Rating & Certification Corp.*, Case No. 8:17-cv-3401-DDC-JDA, 2018 U.S. Dist. LEXIS 133576, at *16 (D.S.C. July 23, 2018) ("Plaintiff's electronic signature acknowledging and accepting the terms of the Program Agreement, by clicking the 'I agree' box, constitutes a valid and binding agreement."); *Peng v. Uber Techs., Inc*., 237 F. Supp. 3d 36, 47–48 (E.D.N.Y. 2017) (collecting cases and finding that the plaintiffs assented to arbitration agreements by clicking buttons affirming "Yes, I agree" to the agreements presented to them); *Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1162–63 (E.D. Cal. 2003) (finding that clicking an "I agree" box on web site evinced express agreement to terms); *i.Lan Sys., Inc. v. Netscout Serv. Level Corp.*, 183 F. Supp. 2d 328, 338 (D. Mass. 2002) (holding that clicking "I agree" box is an appropriate way to form enforceable contract).

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

7.
MPA ISO DEFENDANT CHECKR, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

end the Court's inquiry, unless there is a disagreement regarding the class action waiver. All other remaining issues have been delegated to the arbitrator through the Parties' Agreement.

### B. The Class Action Waiver Is Valid And Enforceable

In the Arbitration Agreement, the Parties expressly agreed that the Court, not an arbitrator, must resolve any "disagreements about the scope, applicability, enforceability, revocability or validity of th[e] Class Action Waiver . . . ." (Bhansali Decl., Ex. 2, at p. 10). To the extent that Plaintiff raises any arguments regarding the Class Action Waiver, the Court must resolve those arguments and should find that it is valid and enforceable.

United States Supreme Court precedent forecloses arguments challenging the validity of class action waivers. *See, e.g.*, *Concepcion*, 563 U.S at 350–51 (holding that the FAA preempted a California rule deeming class action waivers unconscionable and noting that "[a]rbitration is poorly suited to the higher stakes of class litigation"); *see also Krogstad v. Loan Payment Admin. LLC*, 740 Fed. App'x 564, 565 (9th Cir. 2018) (stating that "the Supreme Court has repeatedly rejected arguments that class action waivers are invalid"). Indeed, even in the absence of a class action waiver, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010). More recently, in the *Epic* decision, the Court held "as a matter of law" that federal courts must "enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018). Following this precedent, the Court should enforce the Class Action Waiver and compel arbitration on an individual basis.

Here, the Class Action Waiver unequivocally requires Plaintiff and Checkr to arbitrate any Claims "only on an individual basis, and not as a named-Plaintiff or class member in any class or representative proceeding." (Bhansali Decl., Ex. 2, at p. 10). Further, Plaintiff has "waiv[ed] his right to participate" as the named plaintiff or a class member in "any purported class action lawsuit . . . as to all Claims." *Id*. Accordingly, Plaintiff's claims against Checkr must proceed on an individual basis in arbitration, and his class claims must be dismissed. *See Stolt-Nielsen*, *supra*; *Epic Sys.*, *supra*.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

8.
MPA ISO DEFENDANT CHECKR, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

### C. The Arbitrator Must Decide Whether Plaintiff's Individual Claims Are Subject To Arbitration

Because a valid arbitration agreement exists and the agreement delegates issues of arbitrability to the arbitrator, the Court may not decide whether Plaintiff's individual claims fall within the scope of the Agreement. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529–30 (2019) (rejecting the "wholly groundless" exception to delegation that was previously followed by some courts). That issue is for the arbitrator to decide.

"[T]he question 'who has the primary power to decide arbitrability turns upon what the parties agreed about that matter." *First Options of Chicago, Inc.*, 514 U.S. at 943 (emphasis omitted). "[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute, but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc.*, 139 S. Ct. at 529 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). To answer this question, the Court must examine the underlying contract to determine whether the Parties have "clearly and unmistakably" agreed to have the arbitrator decide issues of arbitrability. *See Rent-A-Center, West, Inc.*, 561 U.S. at 80. They have.

Here, Section C of the Arbitration Agreement, which is labeled "Delegation to Arbitrator," states:

> If there is a disagreement about the arbitrability of any Claim (including questions about the scope, applicability, interpretation, validity, and enforceability of this arbitration agreement), [Plaintiff] and Checkr agree that this threshold disagreement shall be delegated to the arbitrator (not a court) and that the arbitrator shall have initial authority to resolve such threshold disagreements.

(Bhansali Decl., Ex. 2 at p. 10). This language clearly and unmistakably delegates issues of arbitrability to the arbitrator. *See MegaCorp Logistics LLC v. Turvo, Inc.*, No. 18-CV-01240-EMC, 2018 WL 3619656, at **5–6 (N.D. Cal. July 30, 2018) (finding that a delegation provision with similar language clearly and unmistakably delegated issues of arbitrability to the arbitrator); *see also Parkridge Ltd. v. Indyzen, Inc.*, No. 4:16-cv-07387-KAW, 2017 WL 7243510, at **4, 6 (N.D. Cal. April 18, 2017) (granting motion to compel arbitration where agreement delegated arbitrability issues to the arbitrator).

MPA ISO DEFENDANT CHECKR, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

It is therefore for the arbitrator, not the Court, to decide whether the Arbitration Agreement covers Plaintiff's individual claims against Checkr. *See Henry Schein, Inc.*, 139 S. Ct. at 529 (when an agreement delegates the arbitrability issue to an arbitrator, a court has no power to decide that issue "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless").

Because a valid Arbitration Agreement exists and it delegates issues of arbitrability to the arbitrator, there is nothing else for the Court to decide. It is for the arbitrator to determine whether the Agreement covers Plaintiff's individual claims, and the Court should compel the arbitration of those claims on this basis alone.

### D. Plaintiff's Claims Fall Within The Scope Of The Arbitration Agreement

If for some reason the Court were to decide the issue of arbitrability despite the delegation provision, it should find that Plaintiff's claims against Checkr are covered by the Arbitration Agreement.

To determine what claims are subject to arbitration, courts look to the contract in light of the presumption of arbitrability under the FAA. *Moses H. Cone*, 460 U.S. at 24–25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."). To overcome this presumption, Plaintiff must demonstrate there is no permissible interpretation of the Arbitration Provision that would cover his claims. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960) (courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . [d]oubts should be resolved in favor of coverage"). Plaintiff cannot meet his burden.

Here, Plaintiff's claims against Checkr all fall within the scope of the Arbitration Agreement. The Agreement expressly covers "any disagreement, claim, or controversy *arising out of or relating in any way to* . . . [Plaintiff's] access to and/or use of [Checkr's] Services, or the provision of content, services, and/or technology on or through the Services." (Bhansali Decl., Ex. 2 at pp. 9–10 (emphasis added)). The TOS defines Checkr's "Services" as "obtaining, delivering, and managing background reports and related documentation; obtaining status information regarding background

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

10.
MPA ISO DEFENDANT CHECKR, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

reports; Checkr's processes for generating background reports and resolving potential inaccuracies; requesting a copy of [Plaintiff's] consumer file; and/or any disputes relating to [Plaintiff's] background check." (*Id.* at p. 1).

Plaintiff alleges that Checkr reported inaccurate and outdated information about him in violation of the FCRA and that he was prevented from working with Uber as a result. (Complaint (ECF No. 1), at ¶¶ 32–37). Plaintiff also challenges Checkr's processes for generating his background report. (*Id*. at ¶¶ 47, 51). There is nothing exceptional about the fact that Plaintiff's claims arise under the FCRA, and such claims are regularly sent to arbitration. *See, e.g.*, *Novic v. Credit One Bank, N.A.*, 757 F. App'x 263 (4th Cir. 2019) (reversing the district court's order denying a motion to compel arbitration in an FCRA case). Plaintiff's claims are: (1) related to Checkr preparing and delivering a background report on him; (2) related to Checkr's processes for generating that report; and (3) arise out of a dispute Plaintiff has with respect to his background check. Thus, Plaintiff's claims are encompassed by the plain language of the Agreement and must be arbitrated even if the Court were to decide the arbitrability issue.

### E. The Court Should Dismiss The Action Instead of Staying It

The Supreme Court has interpreted the FAA as requiring district courts to direct the parties to proceed with arbitration whenever a dispute is subject to arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). When arbitration is compelled and all issues will be decided during the arbitration, district courts can dismiss the case in its entirety. *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014) (affirming dismissal and stating that a district court may dismiss an action outright when it determines that all of the claims raised in the action are subject to arbitration).

Here, Plaintiff's claims must be arbitrated on an individual basis and all issues will be decided during arbitration. Accordingly, the Court should dismiss the case rather than stay it.

### IV. CONCLUSION

Plaintiff cannot evade the Class Action Waiver or the Arbitration Agreement, under which the arbitrator, not the Court, is to decide whether his individual claims against Checkr are

MPA ISO DEFENDANT CHECKR, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

arbitrable. Based on the plain language of the Agreement, Plaintiff's claims against Checkr must be arbitrated on an individual basis. Accordingly, Checkr respectfully requests that the Court compel Plaintiff to arbitrate and dismiss or stay this case pending arbitration.

Dated: May 12, 2020

*/s/ Rod M. Fliegel*
Rod M. Fliegel
William J. Simmons
LITTLER MENDELSON, P.C.

Attorneys for Defendant CHECKR, INC.

4830-4491-9227.4 091435.1048

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

12.

MPA ISO DEFENDANT CHECKR, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION